The next case for argument is 25-2277, District of Minnesota. Jquan McInnis v. Warden William Bolin All right, Mr. Sperbeck, we'll hear from you first. Good morning to both counsel. Good morning, and may it please the Court and counsel, my name is Roy Sperbeck, and I represent the appellant Jquan McInnis. This case involves an application of 28 U.S.C. 2254, the habeas corpus statute applicable to state prisoners when challenging their state court convictions. More specifically, the question here today is whether the Minnesota Supreme Court unreasonably applied the constitutional harmless error standard from Chapman v. California when it held that the erroneous admission of Mr. McInnis' statement at his court trial was harmless beyond a reasonable doubt. In the State District Court, McInnis moved to suppress his statement to police because he had invoked his right to remain silent. The trial court denied his motion. As relevant here, at a court trial, the State trial court, as fact finder, used McInnis' statement both as to what he did tell police and what he did not tell police to find that McInnis' intent to kill the intended victim in Count 1 transferred to the second victim in Count 2. On appeal to the Minnesota Supreme Court, that court held that the State trial court had erred, only denied McInnis' motion to suppress his statement, but concluded that the error was harmless. McInnis timely filed a habeas corpus petition in the District of Minnesota. In Federal District Court, both Magistrate Judge Mikko and Judge Schultz ruled that McInnis had satisfied the standard from Brecht v. Abrahamson, namely that there was injurious effect on the verdict because of the admitted statements. However, both concluded that McInnis had not met Section 2254's unreasonableness standard. So you have the Federal District Court, both the Magistrate Judge in the report and recommendation, and Judge Schultz in adopting the report and recommendation, ruling that Brecht is satisfied, but the statute wasn't satisfied. It's a very unusual situation to have one and not the other. On appeal to this Court, for the following reasons, under these facts, our argument today is that McInnis did satisfy the 2254 standard and that the State court's application of clearly established Federal law was not merely incorrect or erroneous, but was, in fact, unreasonable. Under Chapman v. California, the focus of the test is whether the verdict was impacted by the erroneously admitted evidence, meaning that there is no possibility that it might have contributed to the conviction. That test is where the application by the Minnesota Supreme Court is unreasonable. As Magistrate Judge Mikko correctly found, the State trial court explicitly used what the appellant said and, more importantly, what he did not say when addressing the issue of his intent and whether that intent had transferred from the intended victim to the second victim. Because this case is a trial, is a court trial in State court, we have the judge's findings. No speculation is required. And the fact finder told us that they used the erroneously admitted evidence to find appellant or find McInnis guilty on count two. Because transferred intent was the disputed issue in count two and the State's independent evidence is not overwhelming on that element, the admission of the evidence is not harmless beyond a reasonable doubt. The State trial court correctly found that McInnis did not intend to kill J.R., victim two. The only way to find him guilty of an intentional killing on count two is to find that McInnis still had an intent to kill the victim in count one, Mr. Christensen, when he fired the final shot that killed J.R. But looking at the record, because the last shot is fired after the first six and from a different location, the evidence certainly is not overwhelming that that intent transferred. What the record shows is that McInnis fired six shots directly at Christensen at very close range. The evidence on intent to kill for Mr. Christensen is very strong. However, after those six shots are fired, McInnis moves. What the trial judge found in the State court was that he moves back toward the alley. So he is moving from directly in front of where Christensen is sitting to behind him. What the trial court said is as he ran away, he fires the final shot. The medical examiner and the ballistics evidence in the case would show that it is the final shot that tragically and terribly kills the child, J.R. But that last shot is different from the first six. The State's argument along the way in this case has been the evidence is strong enough to show that that last shot is included with the intent on the first. You could at a trial, another trial, excluding defendants, properly excluding defendants' statement. Could the State make that argument? Of course they could. Could the defendant make a different argument and say it didn't transfer, I'm not guilty of an intentional killing? Yes. The standard is not whether the evidence was sufficient. It's whether or not the erroneously admitted evidence impacted the verdict. And I think both Judge, Registrary Judge Mikko and Judge Schlitz correctly determined was that there was no world that this did not affect the verdict because the trial judge told us it did. And the evidence isn't otherwise so overwhelming on the point to make it harmless. Is that the Brecht analysis that you just walked us through? Yeah. So the Brecht is injurious influence. So magistrate judge, you have to satisfy both. I think that's what Davenport says. So when examining Brecht, the magistrate judge was concerned about the State court's use of what appellant didn't say. Basically, you didn't say you were scared when you talked to the police. You didn't say that anyone was threatening you. But the trial judge used that to basically say, that's how I know you intended it. And that's what concerned Judge Mikko and it concerned Judge Schlitz. But yes, I was talking, the language I was using there, Your Honor, was Brecht. So I want to be real clear on this. There are parts of the State's case where the evidence is very strong, identification, causation. And if the error I was talking about went to those elements, I think it would be harmless. And I think if you, if the court looks at Judge Mikko's report and recommendation, you can see how he has divided out count one and count two for the analysis and that he correctly considered that the evidence on count one, even if there was an error, it was harmless because the case is so strong across those. How does the, how would the vacator of count two affect the sentence or anything? My client is serving a consecutive life sentence on count two. So basically, he has to serve count one. Which is what? The life sentence. But he has an opportunity for parole. So he has to serve the first life sentence. He then has to be paroled by the Minnesota Department of Corrections. He would then start serving the second life sentence. So it matters. Well, you haven't explained how. Okay. I'm not doing it very well. Are you saying that the time of parole eligibility would be later? If he didn't have a life sentence on the second count, he would be eligible for release sooner. Because they're consecutive. Because they're consecutive, yes. I'm seeing, I know I'm not answering your question by how. Yes, there's two life. I'm not sure it's material. I just wanted to make sure there was some practical. I can assure the court there is a practical effect on the length of the sentence he serves. Does it matter if the Miranda decision is reasonably debatable, even though it came out in favor of the defendant? Does that matter? I don't think it matters. I think once the Minnesota Supreme Court concludes that there's a Miranda violation, that is basically a fact that is calcified for the rest of the case. If the prosecutor was concerned about the wrongness of that decision, their opportunity was to challenge it in a cert petition to the Supreme Court. Judge Mikko notes in a footnote in the report and recommendation that the state has not argued that it was incorrect. They have not argued that it is incorrect to this court. I will say I've thought about this. The only place I think it could possibly have some relevance is in the Brecht analysis. I'm not saying it does. I'm saying it possibly could because Brecht is technically an equitable test. Well, there's that, and then there's the case law that says unreasonable application under AEDPA doesn't call for a review of the reasoning of the state court as though it were an administrative agency. It calls for a determination whether the overall decision was reasonable. So I could imagine the state maybe arguing. Yeah, I don't. It would have been reasonable for the state court hypothetically to say there was no Miranda violation, but it hasn't been argued, so. Your Honor, I see that I am out of. How much do you save for Rovada? I've got eight seconds. I'll save it. Thank you. Well, we took some of your time, so we might give you a minute. Ms. Cornell, we'll hear from you. Good morning. May it please the Court. Good morning to counsel. My name is Nicole Cornell. I'm an assistant Hennepin County attorney from Minneapolis, appearing on behalf of Appali William Bolin Warden. Federal habeas relief is prohibited in this case because Appellant McInnis fails to satisfy the exacting requirements of AEDPA. Magistrate Mikko and Judge Schiltz have essentially presented this Court with two avenues to affirm the denial of habeas relief under AEDPA. And the first avenue is through AEDPA's clearly established federal law requirement. The absence of clearly established federal law as determined by the United States Supreme Court in this context is dispositive. Magistrate Mikko and Judge Schiltz agreed that Appellant failed to identify such on-point clearly established federal law to move on with AEDPA analysis. Nothing has changed between Magistrate Mikko's report and recommendation and Judge Schiltz's order. And today, McInnis still fails to present any authority which constitutes clearly established federal law as determined by the United States that is on point as required by AEDPA. The second avenue is through AEDPA's unreasonable application requirement, which requires that Appellant show that all fair-minded jurists would disagree with the unanimous Minnesota Supreme Court as to its harmlessness determination. Case law shows that this is a high bar, but that is not an impossible-to-clear bar. Appellant McInnis, Magistrate Mikko, and Judge Schiltz agreed that McInnis has failed to clear this bar as well. And under either avenue, the outcome should be the same in this case, which is an affirmance of the denial of habeas relief. I don't understand what you mean by under either avenue. It seems to me that the Petitioner could get relief if he satisfies either one. Sure. But both are required to grant relief under AEDPA. You need to point to clearly established federal law that the Minnesota Supreme Court unreasonably applied, and McInnis fails to do either. That's how I read Magistrate Mikko's report and recommendation and Judge Schiltz's order adopting it, that there are those two requirements, and either way Appellant loses on this appeal. I think that, well, okay. How do you define the issue of the issue that is or is not clearly established? Sure. Because certainly Miranda is clearly established, right? Certainly Miranda is clearly established on the issue of admissibility. And the Minnesota Supreme Court went beyond the issue of admissibility when it analyzed essentially under Chapman whether that error was harmless. And to satisfy the clearly established federal law requirement under AEDPA, McInnis needs to find some United States Supreme Court case that addresses the question of how courts should conduct harmless error analysis when it comes to omissions in a police statement. And none exists. That's what Magistrate Mikko determined. Also, Judge Schiltz determined as well. Well, I'm concerned you're conflating the contrary two-prong and the unreasonable application prong. They're separate. Sure. And a petitioner doesn't have to satisfy both. He can either show that the decision was contrary to clearly established law, or he can show it involved an unreasonable application of clearly established law. And I think the district court was saying it's not contrary to clearly established federal law because there's no case right on point. But it is closer, they thought, on whether it was an unreasonable application of Brecht. My apologies for being confusing, Your Honor. I will defer to that characterization of Magistrate Mikko.  But why don't you address whether it's an unreasonable application of Brecht? Well, first, Your Honor, for the unreasonable application analysis, we don't apply Brecht again. Is that, Your Honor? I mean, an unreasonable application of Chapman, I guess. Yes. Okay. Yes. Understood. Thank you. Understood, Your Honor. Thank you. And I'll sort of pick up where opposing counsel has left off in his argument this morning. I'll point this Court to Yates v. Evitt cited in the briefs, a United States Supreme Court case from 1991. And the standard there, I'll quote, to say that an error did not contribute to the verdict is rather to find that error unimportant in relation to everything else the jury considered on the issue in question as revealed by the record. So simply because Judge Redding may have summarized McInnes' post-invocation statements to police in its findings, that doesn't automatically indicate that that particular inadmissible piece of evidence contributed to the verdict. You still look at the entire record and determine whether the admission of that post-invocation portion of his statement was unimportant or not. And in this case, with this expansive record, including Judge Redding's detailed order and verdict, it is unimportant. In addition, I'll also point to the United States Supreme Court case of Harrington, which requires this Court essentially under AEDPA for the unreasonable application requirement to determine that the Minnesota Supreme Court's harmlessness determination was, quote, so lacking in justification, unquote, that there was an error well understood and comprehended in existing law beyond any possibility of fair-minded disagreement. So for this Court to make that determination, that is an extremely high bar that McInnes has not cleared in this case. What about the fact that, as I understood the State Supreme Court decision, it emphasized the six shots to the chest and said that was overwhelming evidence of premeditation. And I understood the appellant here to be arguing that may be true, but the shot at issue here is the later shot that he made while moving away from the car. Did the State Supreme Court, by not distinguishing among the shots, unreasonably apply Chapman? No. And the State does not dispute that the seventh shot is the shot that killed the infant in this case, J.R. But I will note that in the Minnesota Supreme Court's opinion, I have the slip opinion here. My apologies. In the slip opinion, page 20, the Minnesota Supreme Court starts a new paragraph addressing the victims separately as to prejudice on the intent element here for the seventh shot. The other thing I have to clear up during this particular part of our discussion this morning is... Since you don't have the reported opinion, what's the beginning of the paragraph that you're referring to? Since you can't give us a page number. So the Minnesota Supreme Court clearly did parse out each victim in this case and honed in on the element of contention, which would be intent and transferred intent as to the infant. And they went through a robust analysis of prejudice here. As a factual matter, I apologize if I interrupted, Chief Judge. Okay. And as to the facts, opposing counsel has stood here this morning indicating that there's appreciable time and space between shots one and six and shots seven, and that is not what the record shows, that's not what Judge Redding found, that's not what the Minnesota Supreme Court determined, and that is not what happened based on all the evidence in the case. The Minnesota Supreme Court wasn't unreasonable in their Chapman application, and that's the reason why McInnes' trial counsel sort of conceded in their closing argument that there was no appreciable time between any of the seven shots. And it's not just the manner and nature of the killing, which obviously applies to victim Christensen and transfers to the infant victim in this case, J.R., but there's the shot spotter evidence. The shot spotter evidence indicated that at one particular point in time down to the second there was a flurry of shots. There was no appreciable time between any of the shots. You can't treat shots seven different from shots six as it relates to time. And now we can talk about how McInnes may have moved his feet, maybe just a few feet, maybe one step, but the trajectory rods of the shots show that McInnes was shooting at Mr. Christensen from the open rear passenger door of the red Dodge Stratus, a sedan, shoots six times, takes perhaps one or two steps, and shoots through the back, left, rear windshield, right where Gus Christensen sat. There was no difference in the intended direction of the shots. It was still at Gus Christensen, at a baseball cap, seated on the back window sill, right where Gus Christensen sat. A hat is on someone's head. It's right at the same level as shots one through six. And the unfortunate reality is that his angle at the back left rear of this sedan was such that the angle missed that hat by inches and struck J.R. right in the chest. There is no appreciable time or space between any of the shots to warrant relief in this case. I apologize for being over. I can conclude. Thank you. Thank you for your argument. We'll give you one minute for rebuttal, Mr. Sperbank. Thank you. I saw that eight seconds pop up and I was worried. Three things. This isn't a case where the trial court just summarized record and testimony. It uses the testimony in its conclusions of law. And I just point the court to Appendix 58 and 65, and you can see the paragraphs where the court uses the statement, not just summarizes it. Number two, Miranda is clearly established law. Miranda determines the scope of what is suppressed. What is suppressed is the defendant's statement. Not parts of the statement, not incriminating parts, not exculpatory parts, not the truth, not lies, the statement. Without the whole statement, the fact finder can't determine what is omitted. The problem here is that the trial judge's fact finder is using what is omitted to determine intent. That is clearly established Federal law as determined by the Supreme Court. The other clearly established Federal law in this case is Chapman. Chapman applies in every constitutional harmless error case. Of course you are going to have different facts in those cases, but Chapman is still clearly established law. Thank you. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Counsel are excused.